# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-SA-01514-SCT

*COMO STEAK HOUSE, INC., THE WINDY CITY GRILLE, LLC, MAY'S COMO RENTAL, LLC, COMO COURTYARD, LLC, LITTLE RED DOT, LLC, ORR FAMILY FARM TRUST, MIKE TAYLOR BARTLETT, MARGUERITE JEMISON BARTLETT, EARNESTINE BRIDGEFORTH, DOROTHY KERNEY WILBOURN, VIRGINIA L. YOUNG, VIRGINIA PORTER GRAVES, MIRIAM ATKINSON SMITH AND BETTY ORR ATKINSON*

*v.*

*BOARD OF SUPERVISORS OF PANOLA COUNTY, MISSISSIPPI AND H & G LAND COMPANY, L. P.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2014 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| TRIAL COURT ATTORNEYS: | JOHN T. LAMAR, JR. |
| | DAVID M. SLOCUM, JR. |
| | MICHAEL K. GRAVES |
| | WILLIAM B. PALMERTREE |
| | DARRIN JAY WESTFAUL |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID M. SLOCUM, JR. |
| | JOHN T. LAMAR, JR. |
| ATTORNEYS FOR APPELLEES: | DARRIN JAY WESTFAUL |
| | H. SCOT SPRAGINS |
| | GOODLOE T. LEWIS |
| | LAWRENCE J. TUCKER, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/15/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     H&G Land Company, L.P. ("H&G"), filed an application with the Panola County Land Development Commission ("the Commission") for a special exception to Panola County's Land Use District Ordinance ("the Ordinance") to extract sand and gravel on its property. When the Commission failed to approve the request, H&G appealed to the Panola County Board of Supervisors ("the Board"), which reversed the Commission. This appeal followed. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In areas zoned "Agricultural," the Ordinance provides for permitted uses, and uses permitted by special exception. An owner of agriculturally zoned property may apply for a special exception permit for the "extraction of . . . gravel . . . provided a reclamation plan is submitted and approved by the . . . Commission." According to the Ordinance, the Commission, or the Board—in considering whether to grant a special exception—

> shall investigate all aspects of the application giving particular regard as to whether such a building or use will:
> (a)     [s]ubstantially increase traffic hazards or congestion[,]
> (b)     [s]ubstantially increase fire hazards[,]
> (c)     [a]dversely affect the character of the neighborhood[,]
> (d)     [a]dversely affect the general welfare of the county[,]
> (e)     [o]vertax public utilities or facilities[, and]
> (f)     [b]e in conflict with the goals of [the] Progress Panola General Development Plan.

And "any party aggrieved by any final action, decision, ruling, judgment, or order of the . . . Commission may appeal to the . . . Board . . . within ten calendar days of such decision."

¶3.     H&G entered into a lease agreement with APAC-Mississippi, Inc. ("APAC"), whereby APAC would operate an asphalt plant and mining operation on H&G's land for a

2

period of twenty years. H&G then filed an application for a special exception to extract sand and gravel on its property. The application included documentation concerning property, including ownership, government permits, insurance, a bond for reclamation of the property, and site proposals. Thereafter, the Commission held a series of hearings to consider H&G's application. At the last hearing, the Commission denied the application and informed H&G that it could appeal to the Board.[1]

¶4.     Two days later, H&G—along with APAC—notified the Commission that it wished to appeal the "Commission's failure to approve" its application to the Board. At its next regularly scheduled meeting, the Board held a hearing to consider H&G's request. Several local businesses and residents attended the meeting to oppose H&G's request, so the Board permitted each side—the applicant and those opposed—thirty minutes to present their arguments.

¶5.     Following each side's presentation, the Board voted to approve H&G's application. The Board's order approving H&G's special exception stated:

**ORDER OF THE BOARD OF SUPERVISORS**

On August 12, 2013, there came on for consideration by the Board . . ., an appeal filed by H&G . . . and APAC . . . of a decision by the . . . Commission rendered July 8, 2013, denying the application for a special exception. Presentations were made by Mike Graves, attorney for H&G . . . and APAC . . . and David Slocum, attorney for a group citizens from the Como, Mississippi area. Testimony was offered by Jerry Brewer concerning the effect of mining operations on property values. A copy of the curriculum vitae of [] Brewer is incorporated in the record of these proceedings.

---

[1] The parties dispute whether the Commission actually "denied" H&G's application or simply "failed to approve" it. For purposes of this appeal, we believe it to be irrelevant. However, the Commission's minutes do state that the application was "denied."

3

Testimony was also offered by Earnestine Bridgforth of Cistern Hill M.B. Church, James May, Tim Rakestraw of APAC . . . Nolan West of H&G . . . and other individuals attended the meeting.

H&G . . . and APAC . . . presented a notebook with 29 tabbed entries, which is incorporated into the record of these proceedings. The Concerned Citizens of Como, Mississippi, also presented a booklet with correspondence and petition with affidavits, which is incorporated into the record of these proceedings.

After discussion, Supervisor Flint made a motion to approve the application for special exception for twenty (20) years with hours of operation from 6:00 A.M. to 6:00 P.M., Monday through Saturday, and that the application was to conform to the site plan submitted by the applicants. Supervisor Thomas seconded the motion and a roll call vote was held. Supervisors Flint, Thomas, and Morris voted in favor of the motion. Supervisor Birge voted against the motion. Supervisor Avant was absent due to illness.

IT IS THEREFORE ORDERED by the Board . . . that the decision of the [] Commission dated July 8, 2013, denying the application of H&G . . . for a special exception in an agricultural district for a gravel mine, hot mix asphalt plant, concrete plant, crusher and sand and gravel washer located [at]16535 Highway 310, Como, Mississippi, is hereby overruled a special exception is granted to H&G . . . and APAC . . . for a twenty (20) year period with hours of operation to be limited from 6:00 A.M. until 6:00 P.M. on Mondays through Saturdays of each week. The operation and development shall conform to the site plans submitted by the applicants. A certified copy of this Order shall be forwarded to Michael Graves . . . .

¶6. Thereafter, in the Circuit Court for the First Judicial District of Panola County, Mississippi, the Appellants[2] filed a Notice of Appeal, stating that they were appealing the Board's approval of H&G's special-exception application. The Board properly verified the Bill of Exceptions as selected by the Appellants, and the appellate record was designated.

---

[2] For the purposes of brevity, we refer collectively to all parties who appealed the Board's decision approving H&G's application simply as "Appellants."

4

H&G and APAC then filed a motion to intervene, which was granted by an Agreed Order Allowing Intervention.

¶7.     In their brief, Appellants argued that the Board's decision was both unsupported by substantial evidence and arbitrary or capricious.  The Board responded to the contrary. H&G and APAC filed a brief asserting that Appellants lacked standing to appeal the Board's decision, and that—because the appeal was not timely filed—the circuit court lacked jurisdiction.

¶8.     The circuit court affirmed the Board's decision.  H&G and APAC filed a Motion to Reconsider, and the court entered an order Granting in Part and Denying in Part—in which it granted on the standing issue but once again rejected the argument about timeliness of the appeal.  Within its order, the court scheduled a hearing for the parties to present evidence and arguments on the question of standing.

¶9.     Following a lengthy hearing, the court entered a Final Order on Standing/Merits, finding that Appellants had standing to appeal the Board's decision, and also concluding once again that the Board's decision was supported by substantial evidence, was not arbitrary or capricious, and consequently must be affirmed.

¶10.    Appellants timely appealed to this Court.  H&G and APAC cross-appealed, raising yet again the issues of timeliness and standing.[3]  APAC then filed with this Court a Motion to Dismiss Cross-Appeal and Withdraw from Direct Appeal.  Although neither the Board nor Appellants opposed APAC's withdrawal, H&G responded and contended that APAC was

_____

[3] H&G appears to have abandoned these arguments as it completely failed to address either issue in its brief to this Court.  Therefore, we do not consider their cross-appeal.

5

a necessary and indispensable party. A panel of this Court—composed of Waller, C.J., Kitchens and Pierce, JJ.—granted APAC's motion to withdraw and struck H&G's response as untimely. Now before us, Appellants raise the following three issues:

I. **Whether the Board's decision to approve H&G's application for special exception was supported by substantial evidence;**

II. **Whether the Board's decision to approve H&G's application for special exception was arbitrary or capricious; and**

III. **Whether APAC is a necessary and indispensable party whose withdrawal renders the appeal moot requiring reversal of the Board's decision.**

## STANDARD OF REVIEW

¶11.    This Court has held that a board's decision regarding an application for a "special exception" is an adjudicative rather than legislative act;[4] and when reviewing such acts, we employ the same standard of review we utilize in appeals from administrative agencies.[5] Accordingly, we will not disturb the Board's decision to approve H&G's application for special exception unless we find that the Board's decision was 1) unsupported by substantial evidence, 2) arbitrary or capricious, 3) beyond the Board's scope or powers, or 4) in violation of a party's constitutional or statutory rights.[6]

---

[4] *Barnes v. Bd. of Supervisors, DeSoto Cty.*, 553 So. 2d 508, 510 (Miss. 1989).

[5] *Falco Lime, Inc. v. Mayor & Alderman of City of Vicksburg*, 836 So. 2d 711, 721 (Miss. 2002).

[6] *Wilkinson Cty Bd. of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007, 1010 (Miss. 2000).

¶12. It is true that the initial burden rested upon H&G to "prove by a preponderance of the evidence that [it] [had] met the elements/factors essential to obtaining the [special exception] permit."[7] But once the Board made its decision, "a rebuttable presumption exists in favor of the action of [the Board], and the burden of proof is on the party challenging [the Board's decision]."[8]

¶13. We "may neither substitute [our] own judgment for that of the [Board] which rendered the decision nor reweigh the facts of the case,"[9] for, it is "not the function of [this Court] to determine whether the action of the [Board] is right or wrong, correct or incorrect, wise or unwise, advisable or best fitted to the situation involved."[10] Further, the bill of exceptions "serves as the record on appeal," and an appellate court "can only consider the case as made by the bill of exceptions."[11]

## DISCUSSION

I. **Whether the Board's decision to approve H&G's application for special exception was supported by substantial evidence.**

---

[7] *Wilkinson Cty. Bd. of Supervisors*, 767 So. 2d at 1010 (quoting *Barnes*, 553 So. 2d at 511).

[8] *Pub. Emps. Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000).

[9] *Id.*

[10] *Falco Lime, Inc.*, 836 So. 2d at 722.

[11] *Lowndes Cty. ex rel. Bd. of Supervisors v. McClanahan*, 161 So. 3d 1052, 1056 (Miss. 2015) (quoting *Hooks v. George Cty.*, 748 So. 2d 678, 680 (Miss. 1999)).

¶14.    Appellants first contend that the Board's decision to approve H&G's application for special exception was unsupported by substantial evidence.  For reasons discussed below, we disagree.

¶15.    This Court defines "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion."[12]  We have further described "substantial evidence" as "more than a mere scintilla of evidence," or "something less than a preponderance of the evidence but more than a scintilla or glimmer."[13]

¶16.    As already mentioned, when determining whether to approve or deny an application for special exception, the Ordinance requires the Board to carefully consider six factors.  We will now identify and discuss each factor and any evidence presented to the Board relevant to that particular factor.

    A.    *Traffic Hazards or Congestion*

¶17.    The Ordinance required the Board first to contemplate whether the proposed site would substantially increase traffic hazards or congestion.  In support of its request, H&G presented materials from a Mississippi Department of Transportation ("MDOT") traffic count for the previous two years—2011 and 2012.  According to these materials, 2,900 vehicles traveled near the proposed site on a daily basis.  APAC's figures indicated that the proposed site would generate between one and two hundred additional vehicles per

---

[12] ***Hooks***, 748 So. 2d at 680 (quoting ***Johnson v. Ferguson***, 435 So. 2d 1191, 1195 (Miss. 1983)).

[13] ***Miss. Dep't of Envtl. Quality v. Weems***, 653 So. 2d 266, 280–81 (Miss. 1995).

day—with two hundred being the absolute maximum. Based on these numbers, the proposed site would increase traffic only by seven to eight percent.

¶18. Also, H&G submitted a site plan showing that the proposed site would have an entrance and exit less than one quarter of a mile from Interstate 55 ("I-55")—demonstrating that most of the additional traffic produced by the site would be along I-55 and not on Highway 310. H&G further showed it already had coordinated with MDOT regarding necessary traffic controls and that MDOT had given H&G instructions on how it was to construct the proposed site's 175 foot entrance/exit.

¶19. And, finally, when concerns were raised about the increased traffic's effect on a nearby church, H&G insisted that it had "made clear that it was willing to cooperate with the church when they had special events going on," and that "APAC repeatedly requested to meet with church leaders to discuss," but the church "repeatedly declined" to do so.

¶20. Additionally, Dwayne Boyd, a representative for APAC, responded to concerns raised about which roads these additional trucks would use. Boyd maintained that, although seventy-five percent of the trucks would be outside haulers, and APAC actually owned only twenty-five percent of the trucks that would be used, APAC would still control what routes—i.e., roads—these outside haulers would take.

B. *Fire Hazards*

¶21. The next factor the board examined was whether the proposed site would substantially increase fire hazards. We first note that this factor was not in dispute at the hearing. Even so, H&G did present evidence relevant to the issue.

¶22.    First, H&G presented evidence that no explosion had ever occurred at any of APAC's twelve Mississippi plants.  Additionally, in the past fifteen years of APAC's operations, only two fires had occurred, and both were "extinguished and handled internally by APAC." Further, the proposed site would have a 2,000 gallon water truck and a freshwater pond to combat a fire, were one to occur.  Finally, if needed, emergency assistance easily could access the site because of its close proximity to I-55.

C.    *Character of the Neighborhood*

¶23.    The Board then considered the third factor—whether the proposed site would adversely affect the character of the neighborhood.  H&G provided the Board with a map of the land surrounding the proposed site showing the area as "predominantly rural [and] sparsely populated."  The only properties located adjacent to the proposed site were owned by Nolan West—the President of H&G—and Cal Wilkins.  H&G presented the Board with a letter from Wilkins evidencing that "he believ[ed] that [the mining operation] would be a good project to have in Panola County."  H&G also pointed out that there were only a few houses within a one-mile radius of the site and that all of those houses were located on the other side of—or across—I-55.

¶24.    With respect to noise, H&G presented evidence that, as to the residences located across I-55, there would be a twelve-foot berm with vegetation along the top, a thirty-foot tree buffer, and an elevated road bed on I-55.  According to H&G, such precautions would prevent those particular residents from hearing any noise from the plant.  As it related to any homes located nearer the proposed site on the same side of I-55—there were few, if any, as

most of the land adjacent to the proposed site was vacant—there would be another twelve-foot berm with vegetation and an already-existing, 300-foot tree buffer. Finally, the machinery used at the proposed site was to be equipped with "white noise."

¶25. H&G next presented evidence that the proposed site would "be almost completely obscured from sight." The twelve-foot berms with vegetation and tree buffers would fully cover the site "except for the very tip top of the processing plants"—such that only about seven feet of the plant would be visible. Additionally, APAC planned to landscape, fence and pave the site's entry/exit. H&G also addressed concerns raised about the site generating dust and asserted that the site was not expected to produce a significant amount of dust, and that any dust that was produced easily could be taken care of by the on-site water truck.

¶26. Finally, with respect to this factor, H&G addressed the site's possible impact on nearby property values. To properly tackle the issue, H&G elicited testimony from Jerry Brewer—a certified real estate appraiser from Senatobia, Mississippi—who first detailed his qualifications and then briefly discussed the methods he employed in assessing "the impact on property values as they relate to proximity to gravel type operations" similar to the one proposed by H&G and APAC. Brewer stated that, based on the investigation he had conducted, "there is no impact on property values as relates to a proximity to a pit." Brewer further asserted that "there is also no inhibition in the development of land residentially."

D. *General Welfare of the County*

¶27. The fourth factor evaluated by the Board was whether the proposed site would adversely affect the general welfare of the county. H&G first pointed out that, initially, the

11

proposed operation would create between fifteen and twenty full-time jobs. Additionally, H&G predicted the plant would increase tax revenues for the county, and H&G expected the town of Como to receive additional revenue from APAC's use of natural gas—pursuant to an agreement entered into between the town of Como and Mississippi Natural, Inc.

¶28. H&G also presented to the Board a letter from MMC Materials—a concrete supplier in the area. In the letter, MMC expressed its desire that the special exception be granted to address "the need for aggregates in Northwest Mississippi." H&G then asserted that APAC "has proven to be a good corporate citizen wherever it has been," and provided the Board with two letters from Mississippi churches thanking APAC for its contributions.

¶29. Finally, H&G highlighted many commendations APAC had received from NAPA—the National Asphalt Pavement Association. In particular, APAC received Diamond Achievement Commendations for Excellence in Asphalt Plant/Site Operations for all of its Mississippi plants. These commendations were based on the plants' "appearance, operations, environmental practices, safety permitting and regulatory compliance, and community relations."

E. *Public Utilities and Facilities*

¶30. H&G then discussed the fifth factor—whether the proposed site would overtax public utilities or facilities. It first pointed out that no county roads would be used by those involved in the proposed operation so that the County would not be "spending any money to maintain roads . . . for the operation of this pit." H&G also submitted two letters from utilities providers for the County—Mississippi Natural and Entergy. Both companies confirmed that

12

they would be capable of providing services to the proposed facility without affecting service to existing customers in the area. And APAC had obtained a permit from the Mississippi Department of Environmental Quality allowing APAC to "divert or withdraw for beneficial use the public waters."

F.      *Progress Panola General Development Plan*

¶31.    The sixth and final factor addressed was whether the proposed site would be in conflict with the goals of the Progress Panola General Development Plan. Because the purpose of Progress Panola is to promote development within the county, H&G insisted the proposed site would help advance the plan by creating additional jobs and increasing tax and other revenues for the County and the town of Como. H&G once again referenced the letter from MMC Materials demonstrating that the site would help fulfill an expressed need for additional sources of aggregate in the area.

¶32.    Based on the foregoing discussion, we are persuaded that substantial evidence clearly supported the Board's decision such that "reasonable minds might accept as adequate to support a conclusion."

¶33.    Appellants' argument—that substantial evidence supported a *denial* of H&G's application—simply is not the question before us. Appellants also repeatedly point to the Commission's failure to approve or deny H&G's application as evidence that the Board erred. But the Commission's decision is not at issue here. Our focus is on whether the *Board's* decision to *grant* H&G's application for a special exception was supported by substantial evidence. And based on discussion above, we find it was.

¶34. Appellants also briefly contend that the Board's decision should be reversed because, they allege, the Board's order "lacked any findings of fact." We find no merit in this argument. It is true that "findings of fact which show the actual grounds of a decision are necessary for an intelligent review of a quasi-judicial or administrative decision."[14] And this Court previously has held that Boards should make findings of fact when granting or denying conditional use, or special exception, permits.[15]

¶35. However, we also have held that "granting the [special exception] permit and imposing conditions upon the granting of the permit, is tantamount to a finding of fact . . . that the six questions were answered and found in favor of the applicants."[16] We believe that the instant case is no different. The Board granted the application and imposed several conditions—(1) restricting its term to twenty years, (2) operating only six days a week, (3) from 6:00 a.m. to 6:00 p.m. Additionally, the Board required that the operation "conform to the site plan submitted by the applicants."

¶36. But, even without the conditions imposed above, the Board's decision contained sufficient findings of fact. In its Order, the Board specifically named the individuals who attended and spoke at the hearing. It further incorporated the "notebook with twenty-nine tabbed entries" submitted by H&G and the "booklet with correspondence and petition with affidavits" prepared by Appellants. Accordingly, we find that the order sufficiently showed

---

[14] *Harrison v. Mayor & Bd. of Alderman of City of Batesville*, 73 So. 3d 1145, 1153 (Miss. 2011).

[15] *Id.* (citing *Barnes*, 553 So. 2d at 511).

[16] *Barnes*, 553 So. 2d at 511.

the Board's grounds for its decision such that its decision could be subject to intelligent review.

> **II.     Whether the Board's decision to approve H&G's application for special exception was arbitrary or capricious**.

¶37.    Appellants next argue that the Board's decision to approve H&G's application was arbitrary and capricious.  For the same reasons as discussed above, we disagree.

¶38.    We have "held that a 'holding which is supported by substantial evidence cannot be arbitrary and capricious.'"[17] An act is "arbitrary" if it "is not done according to reason or judgment, but depending on the will alone."[18]  An act is "capricious" when "done without reason, in a whimsical manner, implying either a lack of understanding or disregard for the surrounding facts and settled controlling principles."[19]

¶39.    And, finally, this Court has held that it will not disturb a governing board's decision "which appears to be fairly debatable."[20] "'Fairly debatable' is the antithesis of arbitrary and capricious.  If a decision is one which could be considered 'fairly debatable,' then it could not be considered arbitrary or capricious."[21]

---

[17] *Falcon Lime, Inc.*, 836 So. 2d at 721 (quoting *Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 526 (Miss. 2002)).

[18] *Thomas v. Bd. of Supervisors of Panola Cty.*, 45 So. 3d 1173, 1181 ( Miss. 2010) (quoting *Gentry v. City of Baldwyn*, 821 So. 2d 870, 873 (Miss. Ct. App. 2002)).

[19] *Id.*

[20] *City of Madison v. Shanks*, 793 So. 2d 576, 578 (Miss. 2000).

[21] *Id.* (quoting *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987)).

15

¶40. We find it unnecessary to recount the multitude of evidence submitted to the Board, but based on the discussion above, we find Appellants' argument to be without merit. The Board's decision clearly was supported by substantial evidence, and as a result "cannot be arbitrary and capricious."[22] Moreover, because the decision was supported by substantial evidence, the Board's decision was, at the very least, "fairly debatable."[23] Accordingly, the Board's decision was not arbitrary or capricious, nor was it unsupported by substantial evidence, and, consequently, we are bound to affirm.

III. **Whether APAC is a necessary and indispensable party whose withdrawal renders the appeal moot requiring reversal of the Board's decision.**

¶41. Finally, Appellants argue that APAC is a necessary and indispensable party to this appeal whose withdrawal renders the appeal moot, requiring reversal of the Board's decision. We must reject this argument.

¶42. The Appellants did not oppose APAC's motion to withdraw from this appeal. Had the Appellants been aware of some reason APAC's motion should have been denied, the time to assert such reason was then.

¶43. Moreover, APAC has disclaimed any interest it once had. In its motion to withdraw, APAC declared it "no longer wishes to continue," that it "no longer wishes to spend its time and resources pursuing the appeal," and that "the property itself is no longer as desirable as it was two years ago." APAC further proclaimed that "if H&G wishes to continue with this

---

[22] *Falcon Lime, Inc.*, 836 So. 2d at 721.

[23] *Shanks*, 793 So. 2d at 578.

16

appeal and possibly use the property . . . for purposes which the special exception approved, it can do so at its own expense, and APAC has no objection."

¶44.    APAC's withdrawal and unequivocal declaration that it will no longer pursue the mining operation demonstrates—by itself—that, if APAC were ever an interested party, it holds that status no longer.  And, the mere fact that one appellee has withdrawn does not retroactively create reversible error by the board of supervisors or the circuit court.

## CONCLUSION

¶45.    The Board's decision to grant H&G's application for special exception was supported by substantial evidence and was not arbitrary or capricious.  We also find no merit to Appellants' argument that APAC is a necessary and indispensable party to this appeal.  Accordingly, we affirm the circuit court's judgment affirming the Board's decision granting H&G the special exception.

¶46.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.  LAMAR, J., NOT PARTICIPATING.**