# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00122-COA

**DESOTO COUNTY, MISSISSIPPI**                                  **APPELLANT**

**v.**

**ANTHONY VINSON AND QUMA VINSON**                          **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2021 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SAMUEL THOMAS BARBER |
| ATTORNEY FOR APPELLEES: | J. KEITH TREADWAY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/15/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     On January 8, 2021, the DeSoto County Circuit Court entered an order reversing a decision by the DeSoto County Board of Supervisors (the board) to approve the division of lot 40 of the A.E. Allison Subdivision, Section C, into two separate residential lots. The circuit court held that the application to divide the property should be resubmitted with written approval of "directly interested" and/or "adversely affected" persons. The circuit court further held that if the landowner was unable to procure the required parties' written approval he should proceed under Mississippi Code Annotated section 19-27-31 (Rev. 2012) in chancery court. Aggrieved by the circuit court's decision, the board appealed.

### FACTS AND PROCEDURAL HISTORY

¶2. On February 20, 2020, Mitchell Shaw, the owner of lot 40 in the A.E. Allison Subdivision, submitted an application to the board requesting that lot 40 be divided into two separate parcels, lots 40A and 40B. Shaw did not set forth the names of any parties who would be "adversely affected" or "directly interested" in the alteration of the subdivision plat within his application as required by statute. Further, Shaw did not provide any of his neighbors in the subdivision with notice of the filing of his application, or notice that the application would be presented for approval at a board meeting on May 4, 2020. The minutes from the May 4, 2020 meeting reflect that "Supervisor Lee asked if Mr. Shaw spoke with his neighbors. Mr. Shaw stated that he had not spoken to his neighbors about the division of the lot."[1] The minutes from the May 4, 2020 meeting also state that:

> Supervisor Lee made a Motion and Supervisor Caldwell seconded the Motion to approve A.E. Allison Section C, 1ˢᵗ Rev. Lot 40 for final subdivision approval to divide Lot 40 into 2 lots on 7.00 acres to include a finding, based upon the application, discussion and comments, including consideration of any impact on property owners in the subdivision, that the owners of the Lot 39 are the only directly interested and/or adversely affected parties, and they will be required to sign the final plat before recording.

At the board meeting held on June 1, 2020, the minutes from the May 4, 2020 meeting were approved by the board. The record on appeal does not contain evidence of any additional actions taken by Shaw or the board in furtherance of acquiring the signature of the lot 39 landowner or the recording of a new plat dividing lot 40.

¶3. On May 14, 2020, Anthony and Quma Vinson (the Vinsons), owners of lot 21 of the

---

[1] The record does not contain a certified copy of the board's minutes. It only contains an unsigned, "draft" stamped copy of the board's minutes for the May 4, 2020 meeting and a partial, unsigned "draft" stamped copy of the board's minutes for the June 1, 2020 meeting. However, the authenticity of the board's minutes are not at issue on appeal.

A.E. Allison Subdivision, filed a notice of appeal pursuant to Mississippi Code Annotated section 11-51-75 (Rev. 2019). The Vinsons alleged that the board failed to "appropriately determine the names of persons directly interested or adversely affected by the decision of the board" to approve the division of lot 40, and failed to "make appropriate parties aware of the proceeding and require that they agree in writing, as required by Miss[issippi] Code Ann[otated] [section]17-1-23(4)." Finally, the Vinsons argued that the decision of the board was "not supported by substantial evidence, was arbitrary and capricious, was a violation of board policy, county ordinance and State law, and was not pursuant to public policy."

¶4.     The circuit court conducted a hearing on October 13, 2020. After considering arguments from counsel, the court entered its January 8, 2021 order reversing the board's May 4, 2020 decision. The circuit court ordered that "the application [must] be resubmitted with written approval of 'directly interested' and/or 'adversely affected' persons OR else the landowner [must] proceed under [section]19-27-31 in the chancery court." The board filed its notice of appeal on February 2, 2020.

## STANDARD OF REVIEW

¶5.     A governing board's decision should not be disturbed unless it is found to be unsupported by substantial evidence, arbitrary or capricious, beyond the board's scope or powers, or in violation of a party's constitutional or statutory rights. *Como Steak House Inc. v. Bd. of Supervisors of Panola Cnty.*, 200 So. 3d 417, 421 (¶11) (Miss. 2016). If the board's decision appears fairly debatable, its decision must be affirmed. *Kinney v. Harrison Cnty. Bd. of Supervisors*, 172 So. 3d 1266, 1269 (¶9) (Miss. Ct. App. 2015). Furthermore, it is the

3

challenging party's burden of proof to show that the board's decision was arbitrary or capricious, beyond the board's scope of powers, or in violation of a party's constitutional or statutory right. *Mayor & Bd. of Alderman v. Hudson*, 774 So. 2d 448, 451 (¶6) (Miss. Ct. App. 2000). "Finally, the standard of review for questions of law is de novo." *Bd. of Supervisors of Hancock Cnty. v. Razz Halili Tr.*, 320 So. 3d 490, 494 (¶12) (Miss. 2021) (internal quotation marks omitted).

## ANALYSIS

¶6.     The board asserts two arguments on appeal: (1) it did not act arbitrarily, capriciously, or outside the scope of its authority in determining that the owner of lot 39 was the only directly interested party to Shaw's petition; and (2) the circuit court erred in finding that the board did in fact act outside of its authority in approving Shaw's application based on a misinterpretation of Mississippi Code Annotated section 17-1-23(4) (Rev. 2012).

¶7.     There are two avenues by which an existing subdivision plat may be altered or vacated. One avenue is set forth in section 19-27-31 and requires that a petition must be filed in chancery court. The second avenue, and the avenue taken in this case by Shaw, is set forth in section 17-1-23, and requires a party to petition the board of supervisors or other governing authority of the municipality. More specifically, section 17-1-23(4) states in part:

> If the owner of any land which shall have been laid off, mapped or platted as a city, town or village, or addition thereto, or subdivision thereof, or other platted area, whether inside or outside a municipality, desires to alter or vacate such map or plat, or any part thereof, **he may petition the board of supervisors** of the county or the governing authorities of the municipality for relief in the premises, **setting forth the particular circumstances of the case** and **giving an accurate description of the property**, **the map or plat** of which is to be vacated or altered **and the names of the persons to be**

4

**adversely affected thereby or directly interested therein**. However, **before taking such action, the parties named shall be made aware of the action and must agree in writing to the vacation or alteration**. **Failure to gain approval from the parties named shall prohibit the board of supervisors or governing authorities from altering or vacating the map or plat, or any part thereof**. Any alterations of a plat or map must be recorded in the appropriate location and a note shall be placed on the original plat denoting the altered or revised plat. No land shall be subdivided nor shall the map or plat of any land be altered or vacated in violation of any duly recorded covenant running with the land. Any municipality which shall approve such a vacation or alteration pursuant to this section shall be exempt from the sale of surplus real property provisions as set forth in Section 21-17-1.

(Emphasis added). In the case at hand, the circuit court held that "[p]ursuant to the plain language of the statute, Mitchell Shaw was required to set forth *in his petition* the names of the persons to be 'adversely affected' or 'directly interested' in the proposed division." We agree. It is undisputed that not only did Shaw not set forth any names of "adversely affected" or "directly interested" parties, he admittedly did not speak to anyone in the neighborhood about his petition. While this fact alone is a deviation from the requirements set forth by the plain language in section 17-1-23(4), the actions taken by Shaw in this case further deviated from the statute in that no "adversely affected" or "directly interested" parties were made aware of the action and none agreed in writing to the alteration of the subdivision lot.

¶8. In *COR Developments, LLC v. College Hill Heights Homeowners, LLC*, 973 So. 2d 273, 282 (¶22) (Miss. Ct. App. 2008), this Court noted that section 17-1-23(4) gives a board of supervisors "authority to alter or vacate a map or plat upon petition by the landowner, desiring the change, **accompanied by** the written agreement of the persons to be adversely affected by or directly interested in the change." (Emphasis added). This Court went on to state that "[i]t is only when the directly interested or adversely affected persons agree in

5

writing that the landowner may secure the vacation or alteration from the Board of Supervisors . . . ." *Id*. at 284 (¶25).

¶9. In the case sub judice, and according to the board's minutes for the May 4, 2020 meeting, Shaw received the approval from the board to divide lot 40 into two lots without listing any "adversely affected" or "directly interested" parties in his petition, without giving anyone notice of the action, and without anyone signing a written agreement to divide the lot. Furthermore, there is no indication from the record that Shaw ever provided the board with a written agreement from the landowner of lot 39, whom the board determined was a "directly interested" party. Given the foregoing facts, the circuit court reversed the board's decision and held that Shaw's application should be resubmitted with the written approval of "adversely affected" and "directly interested" parties or that he proceed under section 19-27-31 in chancery court. We find no error in the circuit court's judgment reversing the board's decision.

## CONCLUSION

¶10. After review of the record in this case and considering the limited scope of our review of the circuit court's judgment reversing the decision of the board, we find no error.

¶11. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

6