# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00171-COA

**WEST JASPER CONSOLIDATED SCHOOL DISTRICT**                                                              **APPELLANT**

**v.**

**CHARLES THOMAS ROGERS AND WILLIAM MICHAEL ROGERS**                                **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2020 |
| TRIAL JUDGE: | HON. ROBERT M. LOGAN JR. |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | RANCE N. ULMER |
| | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| ATTORNEYS FOR APPELLEES: | MARC E. BRAND |
| | T. JACKSON LYONS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/07/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     The West Jasper Consolidated School District (West Jasper) appeals from the Jasper County Chancery Court's judgment finding that the school district had breached sixteenth section lease terms by failing to follow the applicable law in making rent adjustments. West Jasper requests that this Court reverse and render the chancery court's judgment because the court (1) lacked subject matter jurisdiction; (2) employed an erroneous standard of review; (3) erred in determining the Appellees had not materially breached the leases' terms; and (4) "erred by substituting its judgment in place of the Board's decision regarding the

determination of a reasonable annual rental rate." West Jasper also requests that we remand to the chancery court for adjudication of "the issue of attorney's fees." Finding no error, we affirm the judgment.

## STATEMENT OF FACTS

¶2. Thomas and Charlene Rogers were the parents of the Appellees Charles Thomas Rogers (Charles) and William Michael Rogers (Michael) (referred to collectively as the Rogerses). Thomas held sixteenth section leases for approximately 240 acres in Louin, Mississippi, with the Jasper County Board of Education for several decades prior to December 20, 1988. The land was primarily used for running cattle.

¶3. On December 20, 1988, Thomas and Charlene signed a new forty-year sixteenth section lease—classified as farm-residential—for 159.5 acres with Jasper County Board of Education, which is now West Jasper. Charles and Michael (the Appellees) also signed a forty-year sixteenth section lease with West Jasper—classified as farm-residential—for the remaining 79.5 acres.[1] The 159.5-acre tract and the 79.5-acre tract are contiguous parcels. On the property line between the properties is a culvert and a concrete bridge where cows can travel to and from each parcel.

¶4. Each lease contained a rent-adjustment clause (paragraph 3), which provided:

---

[1] The purpose for breaking up the 240-acre parcel into two leases presumably was to comply with Mississippi Code Annotated section 29-3-33(f) (Supp. 1988), which provided that a leaseholder of sixteenth section land classified as farm-residential have no more than 160 acres unless meeting certain conditions. This statute will be discussed in more detail in Part III.

2

At the 10th, 20th, and 30th anniversary dates of the commencement of this lease agreement, lessor shall have a reappraisal of the subject property, at its expense, and a redetermination of a reasonable annual rental. The lessor shall notify lessee of the reappraisal in writing a minimum of ninety (90) days prior to said anniversary dates. The reappraisal shall establish the fair market value of the property. Buildings and other improvements upon the property and not owned by Lessor shall be excluded from the reappraisal evaluation.[2] The amount of the annual rent so determined as of the 10th anniversary date shall be paid annually for the next 10 years, and the annual rent so determined as of the 20th anniversary date shall be paid annually for the next 10 years, and the annual rent so determined as of the 30th anniversary date shall be paid annually for the balance of the lease term.

The annual lease payments were due on July 28, the anniversary date of the leases. During the first ten years, the annual-lease rental amount for the 79.5-acre parcel was $395; for the 159.5-acre parcel, it was $739. In 1998, West Jasper increased the rental payment for both leases with no objection by the Rogerses.

¶5. Both leases also contained the following provision (paragraph 5) addressing assignments and subleases:

Lessee may freely assign this lease in its entirety . . . In the event of an assignment, sublease, or other transfer of possession, lessee shall, within 30 days after the transfer, give notice in writing and provide a true copy of the instrument evidencing such transfer to the Lessor. If these requirements are not timely met, Lessor, upon discovery of the assignment, may declare a forfeiture of this lease. Lessee may not assign, transfer, sublease, or sell any part of the leased property without prior approval of the lessor.

---

[2] These lease terms conform with Mississippi Code Annotated section 29-3-69 (Rev. 2020), which provides that for residential and farm-residential leases, "the board of education may require a rent adjustment clause in which rents are to be adjusted, provided that such adjustments will not exceed the fair market rental value of the lands, exclusive of improvements thereon, as of the rental adjustment dates."

3

On October 20, 2006, Thomas and Charlene assigned their lease (159.5 acres) to Charles and Michael, who also assigned their lease for the 79.5 acres to their parents. Michael averred that the assignments were done "to ensure that the 16th Section leases would remain in our family and would go to the last surviving family member in the leases." Charles also stated that the assignments were for estate-planning purposes and that the attorney who drafted the lease assignments was to deliver them to the West Jasper Board. However, there is no evidence in the record that West Jasper was given notice of those assignments or that the assignments were recorded with the chancery clerk's office.

¶6. Meanwhile, the West Jasper Board of Trustees (Board) had passed a policy in 2004, charging seven percent of the fair market value appraisal of all property as the lease rental payment. Despite the Board's recent policy change, Mike Avary, who was West Jasper's newly hired sixteenth section land manager, used an appraisal from the Jasper County Tax Assessor's office and increased the rental value in 2008 to $1,869.70/$11.69 per acre for the 159.5 acres and $760.90/$9.57 per acre for the 79.5 acres. The Rogerses did not object to this rental adjustment.

¶7. In 2017, before the thirtieth anniversary of the leases, the Board appointed licensed appraiser Lonnie Reynolds to appraise the subject parcels. His appraisal valued the 79.5 acres at $275,000 and the 159.5 acres at $225,000. For both parcels combined, Reynolds valued the two properties at $500,000 and at $3,459 per acre. On June 30, 2017, the Board sent notices of the reappraisal to the Rogerses, informing them that the annual lease payment

4

for each lease was going to be determined by multiplying the appraised value of each property by seven percent. The Rogerses immediately contacted Avary, who told them that this appraisal figure was in accordance with the Board's policy passed in 2004. However, the Rogerses did not raise any objection regarding the appraisal before the Board itself.

¶8. On April 2, 2018, Avary sent the Board and the school district superintendent a letter, stating that the Rogerses' annual lease payments would be increased from $1,869.70 ($11.69 per acre) to $15,750 ($98.44 per acre) for the 159.5- acre parcel and from $760.90 ($9.57 per acre) to $19,250 for the 79.5-acre parcel ($242.12 per acre). On April 10, 2018, the Board voted to increase the rental payments, and notices were sent to the Rogerses of the increased annual rental payments beginning in July 2018. According to Charles, the Rogerses responded by contacting an attorney and hiring an appraiser named J.E. Smith "to do us an appraisal as far as 16th section statutes governing farm residential lease contracts." Smith appraised the parcels at only $10 to $15 per acre.

## PROCEDURAL HISTORY

¶9. On July 3, 2018, the Rogerses filed suit in chancery court against West Jasper, seeking injunctive and declaratory relief. The chancery court granted the Rogerses' request for a preliminary injunction on September 4, 2018, ordering West Jasper to refrain from terminating the Rogerses' sixteenth section lease (subject to the Rogerses posting a $35,000 cash bond). On November 8, 2018, the Rogerses filed an amended complaint adding the

5

Mississippi Secretary of State as a party.[3] The Rogerses filed a second amended complaint on March 25, 2019, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of quiet enjoyment.

¶10. On June 27, 2019, West Jasper filed a motion in limine "to limit evidence regarding setting the fair market rental value to appraisal and not allow the plaintiffs to present evidence of comparative analysis or comparison with the private sector." On July 26, 2019, West Jasper filed a partial motion for summary judgment on the Rogerses' claims of "breach of implied terms of their leases." The Rogerses conceded that this claim, which was covered under the Mississippi Tort Claims Act, "should be dismissed but not with prejudice." The chancery court granted West Jasper's motion for partial summary judgment but dismissed the claim without prejudice, finding that the claim of breach of implied covenants raised in the amended complaint related back to the original complaint. West Jasper's motion in limine was denied.

¶11. In late 2019, both Thomas and Charlene died, and the Appellees became the successors in interest to the 159.5-acre parcel held by their parents. The Appellees filed a motion for substitution of parties, attaching copies of the assignment of leases in 2006. West Jasper responded by arguing that the lease assignments did not comply with the leases'

_____

[3] The chancery court later granted the Secretary of State's motion for an involuntary dismissal in the final judgment. Because the Secretary of State is not a party to this appeal, we find it unnecessary to refer to the Secretary of State's involvement during the legal proceedings.

6

requirements and "violate[d] the amount of acreage a lessee of 16th Section property can hold, in effect the plaintiffs created a new lease . . . comprising 240 acres[.]" On November 14, 2019, the Board voted to forfeit the leases based on these assignments.

¶12.   A hearing was held on November 15, 2019.  John Evans, another appraiser hired by the Appellees, testified that he had appraised the subject parcels at issue and calculated that the fair market rent for the parcels was $1,400 per year ($17.61 per acre) for the 79.5 acres and $2,850 per year ($17.87 per acre) for the 159.5 acres.  Evans further opined that the West Jasper appraisal rate did not reflect a fair market rental value and was "excessive."  Avary admitted in his testimony that an appraisal of fair market rental value was not done.

¶13.   Subsequently, on December 29, 2019, the court held a hearing on the Appellees' motions to substitute the parties and amend the pleadings and West Jasper's motion to terminate the preliminary injunction.  The chancery court granted the Appellees' motion to substitute the parties, and the Appellees filed a third amended complaint.[4]

¶14.   In July 2020, the chancery court granted West Jasper leave to file a counterclaim alleging that the Appellees were not residents of Jasper County at relevant times[5] and that the assignments had been concealed from the Board.  West Jasper asked the chancery court to declare the leases forfeited based on the Appellees' failure to comply with notice

[4] On March 9, 2020, the Jasper County Chancery Court entered orders adjudicating the Appellees as the heirs at law of Thomas and Charlene.

[5] Although there were extensive arguments made to the chancery court whether the Appellees resided in Jasper County, as required by the leases' terms, West Jasper has not raised that issue on appeal.

7

requirements. West Jasper also requested declaratory relief, punitive damages, and attorney's fees.

¶15. After trial, the chancery court entered its findings of fact and conclusions of law on October 20, 2020, ruling that West Jasper "violated the lease by its failure to follow the law regarding rent adjustments"; so the court remanded the matter to the Board with instructions to follow Mississippi Code Annotated section 29-3-63(2) (Rev. 2020) in adjusting the rent. The court also determined that the lawsuit was an original action for breach of contract, not an administrative appeal from a state agency or board.

¶16. The chancery court issued its final judgment on November 2, 2020, ruling that West Jasper had "breached the Rogerses['] leases by failing to follow the law regarding rent adjustment provided for in each lease." All other claims and counterclaims by the parties were dismissed with prejudice. On December 7, 2020, the chancery court denied West Jasper's posttrial motion to amend the judgment.

## ANALYSIS

### I. Whether the chancery court erred in determining jurisdiction was proper.

¶17. West Jasper argued the chancery court lacked jurisdiction because the Appellees failed to file a timely appeal from the Board's decision. The chancery court found the statute was not applicable. Mississippi Code Annotated section 29-3-1(2) (Rev. 2020) provides:

> In the event the board of supervisors declines to approve the rental value of the land set by the board of education, the board of education shall within ten (10) days appoint one (1) appraiser, the board of supervisors shall within twenty

8

(20) days appoint one (1) appraiser and the two (2) appraisers so appointed shall within twenty (20) days appoint a third appraiser whose duty it shall be to appraise the land, exclusive of buildings and improvements, the title to which is not held in trust for the public schools, and to file a written report with each board setting forth their recommendation for the rental value of the land within thirty (30) days. The cost of the appraisal shall be paid from any available sixteenth section school funds or other school funds of the district. *If no appeal is taken within twenty (20) days as provided hereunder, the lease shall be executed in accordance with said recommended rental value* within thirty (30) days of the receipt of the appraisers' report. *In the event any party is aggrieved by the decision of the appraisers setting forth the appraised rental value, the party so aggrieved shall be entitled to an appeal to the chancery court in which the land is located. Such appeal shall be taken within twenty (20) days following the decision. The chancery court, on appeal, may review all of the proceedings, may receive additional evidence, and make findings of fact, as well as conclusions of law to insure that a fair and reasonable return may be obtained on the sixteenth section lands or lands in lieu thereof.*

(Emphasis added). Here, the chancery court determined that "the procedure described in [section 29-3-1] applies specifically to the scenario where the Board of Supervisors of the county declines to approve rental value arrived at by the Board of Education," not "for an appeal by an aggrieved lessee." The court, therefore, "treated this case as a civil action for breach of contract," not an appeal from an administrative board or agency.

¶18. As argued at trial, West Jasper contends that the chancery court did not have jurisdiction because the Appellees failed to file their appeal of the rent increase with the court within the twenty days required by statute. Citing *Turney v. Marion County Board of Education*, 481 So. 2d 770, 779 (Miss. 1985), West Jasper argues that the Mississippi Supreme Court has applied the twenty-day appeal process outlined in section 29-3-1 in a case involving an expiring lease and its renewal. Specifically, the supreme court held, "In light

9

of [section] 29-3-1, this Court does not believe paragraph 3 divests, or is an attempt to divest, appellants of their right to appeal the appraisers' decision to the chancery court if the appellants feel aggrieved." *Id*.

¶19.    *Turney* is distinguishable from the present case—it involved the decision whether to execute a new lease between the parties.  As the chancellor reasoned addressing West Jasper's motion to dismiss:

> [T]his is not a new lease.  This is the interpretation of renewal under a contract.  And I think that the legislature has just left a big hole here as far as what are the rights of the lessee if the lessee is aggrieved.  And it should be, if there's a 20-day limitation, it should be clearly expressed in the statute.

Section 29-3-1 also does not define those parties who may be "aggrieved."  As our supreme court has held:

> In construing any statute, the function of our courts "is not to decide what a statute should provide, but to determine what it does provide." *Smith v. Webster*, 233 So. 3d 242, 247 (Miss. 2017) (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011)).  "Court[s] must not broaden or restrict a legislative act." *Lawson*, 75 So. 3d at 1027 (citing *Barbour v. State ex rel. Hood*, 974 So. 2d 232, 240 (Miss. 2008)).  If the statute's language is clear and unambiguous, we apply its plain meaning and refrain from using principles of statutory construction. *Id*. at 1027.

*Watson v. Oppenheim*, 301 So. 3d 37, 41-42 (¶12) (Miss. 2020).  We find no error in the court's reasoning.  Section 29-3-1(2) states that "[i]f no appeal is taken . . . the lease shall be *executed* in accordance with said recommended rental value."  (Emphasis added).  In this case, the lease is not being executed; rather, "reasonable annual rent" is being readjusted on the thirtieth anniversary of the lease in accordance with its terms.  Furthermore, as we will

10

more fully address in Part II, this action is not an appeal from an administrative agency decision but an original action for breach of contract—specifically whether the Board failed to set a "reasonable annual rental." Thus, the twenty-day appeal time limit outlined in section 29-3-1 is simply not applicable here.

¶20.    Additionally, West Jasper argues that "the chancery court . . . lacked jurisdiction to force the parties to reach a meeting of the minds" in the court's final judgment. We disagree with West Jasper's characterization of the court's judgment. The chancery court remanded the case to the Board for a determination of the fair market rental value in accordance with the applicable statute. There is no "meeting of the minds" contemplated in the court's judgment. As the Appellees note, the "meeting of the minds" for the lease took place in 1988. Furthermore, the case cited by West Jasper to support its argument—*Benson v. Neshoba County School District*, 102 So. 3d 1190 (Miss. Ct. App. 2012)—involved negotiations over a lease that was up for renewal. *Id*. at 1191 (¶3). Accordingly, we find no merit to West Jasper's jurisdictional argument.

II.    **Whether the chancery court applied an erroneous standard of review.**

¶21.    As discussed above, West Jasper claims that this case involved an administrative appeal from a decision by a state board or agency. Therefore, West Jasper claims that the chancery court could not disturb the Board's decision regarding the rental adjustment unless it was "(l) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the Board's scope or powers, or (4) in violation of a party's constitutional or statutory rights."

11

(Quoting *Como Steakhouse Inc. v. Panola Cnty. Bd. of Sup'rs*, 200 So. 3d 417, 421 (¶11) (Miss. 2016)).

¶22. We agree with the chancery court's determination that the action filed by the Appellees was one for breach of contract—particularly, West Jasper's alleged failure to abide by the leases' terms and to follow the applicable law in determining the rent adjustment. In *Gulfside Casino Partnership v. Mississippi State Port Authority at Gulfport*, 757 So. 2d 250, 256 (¶29) (Miss. 2000), the supreme court noted there is "a difference between an appeal challenging an agency's decision under administrative law principles and a civil action against a state agency for breach of contract." "When an agency contracts with a private individual, . . . the agency promises to abide and be governed by the terms of the contract." *Id*.

¶23. "Questions concerning the construction and interpretation of contracts are questions of law" and are subject to de novo review. *Breland v. Trustmark Corp.*, 333 So. 3d 91, 96 (¶15) (Miss. Ct. App. 2022). Furthermore, we review a "chancery court's interpretation and application of the law . . . under a de novo standard." *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001). We find that the chancery court employed the appropriate standard of review in this instance.

### III. Whether the chancery court erred in finding the Appellees did not materially breach the leases' terms.

¶24. As noted, Thomas and Charlene assigned their lease to their sons, who likewise assigned their lease to their parents. It was asserted that the assignments were for estate-

12

planning purposes. West Jasper contends that the Rogerses (now the Appellees) materially breached the terms of the leases in two respects: (1) by assigning the leases in violation of the leases' express terms (requiring them to provide notice to the Board or risk forfeiture); and (2) by creating a farm-residential lease "in excess of 160 contiguous acres[,] render[ing] their farm residential tracts invalidly classified[.]" Mississippi Code Annotated section 29-3-33(f) (Rev. 2020) provides:

> "Farm residential land" shall mean any tract of land upon which a leaseholder resides not exceeding one hundred sixty (160) acres in size existing on July 1, 1978, which is utilized for agricultural purposes. Provided, however, that farm residential land may consist of two (2) noncontiguous tracts not exceeding one hundred sixty (160) acres in the aggregate (a) with reasonable easements connecting the residential and outlying tracts; or (b) within the residential tract situated a distance not exceeding one and one-half (1-1/2) miles from the outlying tract. Provided further that no sixteenth section lands or lands granted in lieu thereof, situated in a county lying wholly or partially within a levee district shall be classified as farm residential land.

West Jasper claims that by assigning their leases, the Rogerses created a tenancy in common "because they each have the right to possess the entirety of the 239 acres."

¶25. Addressing the first argument raised by West Jasper, the supreme court has held, "A breach is material where there is 'a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats the purpose of the contract.'" *Ferrara v. Walters*, 919 So. 2d 876, 886 (¶29) (Miss. 2005) (quoting *Gulf S. Capital Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966); *McCoy v. Gibson*, 863 So. 2d 978, 980 (¶5) (Miss. Ct. App. 2003)). However, because the lease assignments were never recorded with the chancery clerk's office, the chancery court ruled

13

that "to the extent they would create a farm residential leasehold exceeding 160 acres[,] they are a nullity, not binding on [West Jasper] and having no practical or legal effect." Rather, the court determined the Appellees owned both leases "not by virtue of the assignments, but as a result of inheritance,"[6] and West Jasper could address "the issue of size" upon the leases' expiration in July 2028. Thus, the court concluded that there was no material breach, "as a valid assignment never occurred."

¶26. We find that the record supports the court's ruling. Charles admitted in his testimony that the leases were not recorded. Mississippi Code Annotated section 89-5-5 (Rev. 2021) provides:

> Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all creditors and subsequent purchasers for a valuable consideration without notice, only from the time when delivered to the clerk to be recorded; and no conveyance, covenant, agreement, bond, mortgage, or deed of trust which is unrecorded or has not been filed for record, shall take precedence over any similar instrument affecting the same property which may be of record . . . .

The chancery court further noted that "[t]here is no statutory authority for cancelling a farm residential lease that is inherited." Because the assignments were a nullity, we find no merit to West Jasper's argument that the Appellees materially breached the leases' terms.[7]

¶27. We also reject West Jasper's second argument that the Appellees materially breached

---

[6] *See* Miss. Code Ann. § 29-3-53 (Rev. 2020) ("Any lease executed pursuant to this chapter shall inure to the benefit of the lessee therein named, his heirs and assigns[.]").

[7] We further recognize the maxim that "equity abhors a forfeiture, . . . [a]nd this doctrine may be applicable" even when mandated by contract. *Columbus Hotel Co. v. Pierce*, 629 So. 2d 605, 609 (Miss. 1993) (citations omitted).

the leases' terms, as they now have a leasehold of approximately 240 acres in violation of section 29-3-33(f). As the chancery court noted, West Jasper "cites no authority granting it the option of simply voiding the leases under those circumstances"; nor have we found any. With regard to their tenancy classification, the leases' terms provide that the lessees are "joint tenants with rights of survivorship and not . . . tenants in common." Lastly, as the court noted, West Jasper may reconsider the leases' size in 2028 upon the leases' expirations. Mississippi Code Annotated section 29-3-39 (Rev. 2020) provides for the reclassification of sixteenth section land "as is necessary, within one (1) year prior to the expiration date of any existing lease[.]" Paragraph 1 in each lease further affords the Appellees "a prior right, exclusive of all other persons, to re-lease said property at an annual rental based on the then appraised fair market value of the land excluding buildings and improvements not then owned by LESSOR." Therefore, the Appellees may determine, at that time, how to reconfigure their leaseholds to comply with the statutory limitations in the event they wish to re-lease the properties.[8] We find no error in the court's findings of fact and ruling on this issue.

### IV. Whether the chancery court erred in overturning the Board's decision.

¶28. In its findings of fact, the chancery court determined, "Here, we find that the Board

---

[8] We note that the testimony reflects the land had been used for raising cattle for more than fifty years, and there is no indication that the use of the land had changed since the leases' execution in 1988 or after the "assignments" in 2006.

15

breached its contract with the lessees by failing to follow the law, which required it to consider appraisal, comparative analysis, or comparison with the private sector. The Board did none of these things." West Jasper asserts that the court "erred in overturning the Board's decision," which "was supported by substantial evidence" and "followed the law" in determining "a reasonable fair market value for the leases."

¶29. This Court acknowledges the Board's responsibility under section 29-3-1 to ensure "that adequate compensation is received for all usage" of sixteenth section school lands. Section 29-3-63(2) states that for farm-residential land, "fair market rental will apply to those lands as determined by appraisal, comparative analysis or comparison with the private sector." Section 29-3-69 further provides that rent adjustments for farm-residential land "will not exceed the fair market rental value of the lands[.]" As the chancery court noted, the Board, instead, had "a fee simple appraisal made to determine the fair market value of the land itself" and then arbitrarily applied its seven-percent policy to that amount. Avary admitted to the chancellor that he did not know where the seven-percent figure came from. Evans, one of the appraisers hired by the Appellees, opined that the Board's policy of seven percent was "too high."

¶30. There is no testimony that the re-appraisal used by the Board reflected the land's fair market rental value. Reynolds, the Board's appraiser, testified that he made no recommendation to the Board as to the fair market rental value of the subject parcels. In fact, Reynolds clarified that he conducted a "fee simple" appraisal and would not have conducted

16

a fair market rental appraisal had the Board asked him to because he had not done "enough of them to feel comfortable." Avary also testified that the Board "did not get [Reynolds] to give a fair market rental value."

¶31.    During the proceedings, counsel for the Appellees cited an opinion by the Mississippi Attorney General's office, which noted that both sections 29-3-63(2) and 29-3-65 "provide that the appraiser make his recommendation to the board of the fair market rental value of any land coming up for releasing using 'appraisal, comparative analysis, or comparison with the private sector.'" Miss. Att'y Gen. Op., 96-0152, 1996 WL 154170, *Pace*, at *1 (March 28, 1996).  Avary claimed that he did the "comparative analysis" but not with the private sector.  And when counsel asked whether the Board "followed the law" in reference to this opinion, Avary replied, "No."

¶32.    The supreme court has held that the Board "is not bound by a percentage of fair market sale value or fair market rental value of the land." *Barber v. Turney*, 423 So. 2d 133, 135-36 (Miss. 1982).  "The Board is simply required to lease the sixteenth section land for the fair rental value thereof." *Id*. at 136.  However, the supreme court later clarified in *Turney v. Marion County Board of Education* that "*Barber* did not hold that the Board is precluded from using the percentage of fair market sale value method if that method best yields fair rental value. . . . The Board may choose its own method of valuation *as long as the evaluation results in the fair market rental value of the subject land*." *Turney*, 481 So. 2d at 778-79 (emphasis added).  Discussing *Turney*, the chancery court concluded in its

17

findings:

> Mr. Avary said he made a "comparative analysis" but we know that the Board itself did not make one, did not receive a recommendation of a reasonable market rental value from an appraisal, and made no comparison with the private sector. It merely applied a factor of 7% to the fair market value of the land, which appears to epitomize arbitrariness and, frankly, the result shocks the conscience of this court when considering the impact on the lessees.
>
> . . . .
>
> The Board of Education, under existing law, cannot fix a lease rate that is less than fair market rental and the Board cannot fix a rate in excess of fair market rental value. [*See* Miss. Code Ann. § 29-3-69.] The Board must determine the fair market rental value - no more and no less.

Based on the cited statutory authority, relevant law, and record testimony, we find no error in the chancery court's ruling.

### V.    Whether West Jasper is entitled to attorney's fees.

¶33.    West Jasper claims that its attorney's fees to defend the litigation should be awarded on remand. Paragraph 7 of the leases' terms provided that the lessee agrees to pay "reasonable expenses of litigation and a reasonable attorney's fee" should "all other conditions, covenants, and obligations imposed on the lessee" be enforced through proceedings at law or in equity.

¶34.    "[P]arties may by contract provide that in the event a dispute arises, the losing party must pay the prevailing party reasonable attorneys' fees." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 289 (¶31) (Miss. 2005). As the Appellees argue, West Jasper was not the prevailing party, and the only "conditions, covenants, or obligations" sought to

18

be enforced by West Jasper is the "specific performance of forfeiture[,] which the chancellor deemed 'inequitable.'" Based on our affirming of the chancery court's findings, we reject West Jasper's claim that attorney's fees should be awarded.

## CONCLUSION

¶35. Finding that the chancery court (1) had jurisdiction over the action; (2) employed the appropriate standard of review; (3) did not err in ruling that the Appellees did not materially breach the leases' terms; and (4) did not err in finding the Board breached the leases' terms, we affirm the judgment.

¶36. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**